**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SAMEER MOHAMMAD BARAT; and | : | No. 3:25cv181 |
| B&S LIGHTING & FURNITURE INC., | : | |
| Plaintiffs | : | (Judge Munley) |
| | : | |
| v. | : | |
| | : | |
| B AND S LIGHTING AND FURNITURE | : | |
| OUTLET INC.; SOHRAB BARAT; and | : | |
| ILLUMINAIRE LIGHTING AND | : | |
| FURNITURE LLC, | : | |
| Defendants | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

### MEMORANDUM

When business and family intersect, matters can become more complicated than they initially appear.  Those complications are amplified where, as here, brothers operate multiple entities bearing closely similar names.  On January 1, 2025, Plaintiffs Sameer Barat and B&S Lighting & Furniture Inc. ("B&S – NY") brought a fifteen-count complaint against his brother Sohrab Barat, B and S Lighting and Furniture Outlet Inc. ("B&S Outlet – PA"), and Illuminaire Lighting and Furniture LLC ("Illuminaire"). (Doc. 1).

Presently before the court is defendants' motion to dismiss, or in the alternative, motion to stay this action pursuant to the Colorado River abstention doctrine. (Doc. 15).  Defendants also move to dismiss plaintiffs' claim for intentional interference with contractual relations in Count III as well as plaintiffs'

claim for trade secrets misappropriation under the Pennsylvania Uniform Trade Secrets Act, 12 PA. CON. STAT. § 5301 *et seq.* ("PUTSA") in Count IV. (Docs. 16, 17). These motions have been fully briefed and are ripe for disposition.  For the reasons that follows, the motions will be denied.

## Background

The court is tasked with comparing actions brought in federal and state courts involving three brothers—Sameer, Sohrab, and Mohammad Bayat Barat.[1] For ease of disposition, the court will first address the federal action, which is limited to a dispute between Sameer and Sohrab.  On January 30, 2012, Sameer allegedly created the entity B&S – NY. (Doc. 1, Compl. ¶ 12).  B&S – NY sells luxury lighting fixtures and furniture. (Id. ¶ 14).  On October 16, 2018, B&S – NY registered the "B&S Lighting Inc B&S Chandeliers" trademark (the "Trademark") with the United States Patent and Trademark Office ("USPTO"). (Doc. 1-2, Ex. A).[2]

---

[1] These brief background facts are derived from plaintiffs' complaint.  At this stage of the proceedings, the court must accept all factual allegations in the complaint as true. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). The court makes no determination, however, as to the ultimate veracity of these assertions.

[2] Plaintiffs attached documents and pictures concerning the Trademark and the entities Sameer allegedly owns. (See Doc. 1, Compl., Exs. A-J).  Under the law, courts may "generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record" when deciding a Rule 12(b) motion. Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted).  Where a document is integral to or explicitly relied upon in the complaint, it may be considered without converting a motion to dismiss for failure to state a claim into one for summary judgment under

Then, on November 24, 2019, Sameer allegedly incorporated Defendant B&S Outlet – PA as its owner and President.[3] (Doc. 1, Compl. ¶ 22).  According to the complaint, Sameer opened B&S Outlet – PA's authorized bank accounts and was the sole signatory. (Id. ¶ 25).

Sameer asserts that, without his knowledge or consent, Sohrab repeatedly and fraudulently acted as the owner of B&S Outlet – PA and misappropriated the business's name, cash, and assets.[4] (Id. ¶ 27).  Sameer further alleges that Sohrab unlawfully misappropriated tens of thousands of dollars from B&S Outlet – PA by endorsing unauthorized company checks in favor of himself and his wife. (Id. ¶ 28; Doc. 1-5, Ex. D).

Sameer contends that, on or about May 30, 2024, Sohrab fraudulently filed a trade assignment cover sheet with the USPTO, unlawfully transferring

---

Rule 56.  Doe v. Princeton Univ., 30 F.4th 335, 343 (3d Cir. 2022) (citations and internal quotation marks omitted).

[3] Although Defendant Sohrab Barat was also an incorporator of B&S Outlet – PA and initially designated vice president, a few weeks after the business was incorporated, he informed the business's accountant that he did not want to be involved in same and desired to make a new company under his own name. (Doc. 1, Compl. ¶ 23; Doc. 1-4, Ex. C).

[4] According to Sameer, in September 2024, Sohrab, without notice or consent, fraudulently filed articles of amendment for B&S Outlet – PA, removing Sameer as owner and president and designating Zahid Ghaznawi as vice president. (Doc. 1, Compl. ¶ 29; Doc. 1-5, Ex. E). Additionally, Sohrab, without Sameer's consent, allegedly contacted B&S Outlet – PA's customers and directed them to place orders exclusively through him. (Id. ¶ 31).  Sameer further alleges that Sohrab created an unauthorized website falsely stating that "B&S Lighting Inc. Chandeliers is the sole owner of the [T]rademark." (Id. ¶ 32; Doc. 1-8, Ex. G).

ownership of the Trademark from B&S – NY to Illuminaire, another defendant and a company Sohrab allegedly owns.[5] (Id. ¶ 33; Doc. 1-9, Ex. H).

According to Sameer, Sohrab continues to unlawfully misappropriate and infringe the Trademark by using it in fraudulent correspondence to customers, displaying it on an unauthorized website, and selling counterfeit products. (Id. ¶ 34; Doc. 1-11, Ex. J).

On April 28, 2025, defendants moved to dismiss plaintiffs' complaint based on the Colorado River abstention doctrine or in the alternative to stay this case pending the resolution of state court actions in which some but not all of the parties are involved.  Defendants also move to dismiss Counts III and IV of plaintiffs' complaint for failure to state a claim.  The parties have filed briefs in support of their positions, bringing the case to its present posture.

**Jurisdiction**

Because the plaintiffs assert claims under the Lanham Act, a federal statute, the court has jurisdiction pursuant to 28 U.S.C. § 1331. ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). The court has supplemental

---

[5] Illuminaire was allegedly created on May 30, 2024, the same day Sohrab fraudulently assigned the Trademark. (Doc. 1, Compl. ¶ 33; Doc. 1-10, Ex. I).

jurisdiction over plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a).

**Legal Standard**

### 1. Colorado River Doctrine

"The Colorado River doctrine allows a federal court to abstain, either by staying or dismissing a pending federal action, when there is a parallel ongoing state court proceeding." Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc., 571 F.3d 299, 307 (3d Cir. 2009) (citing Colorado River Water Conservation Dist. v. United States, 424 U.S. 800 (1976)). "The doctrine is to be narrowly applied in light of the general principle that federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress." Nationwide Mut. Fire Ins. Co., 571 F.3d at 307 (citation and quotation marks omitted).

The Colorado River doctrine requires a two-step inquiry. The court must first assess whether the state and federal actions are parallel. See id. at 308. If the actions are parallel, the court must then determine whether abstention is appropriate by weighing the six Colorado River factors. See id.

In determining whether "extraordinary circumstances" exist, courts consider the following factors:

> (1) [in an in rem case,] which court first assumed jurisdiction over [the] property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether federal or state law controls; and (6) whether the state court will adequately protect the interests of the parties.

5

Id. (citation omitted).

No single factor is determinative. Id. Rather, the court must carefully balance its duty to exercise jurisdiction and the reasons for abstention, bearing in mind that the balance is "heavily weighted in favor of the exercise of jurisdiction." Id.

### 2. Motion To Dismiss Standard

To survive a motion to dismiss, "a complaint must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief.' "[6] Doe v. Princeton Univ., 30 F.4th 335, 341–42 (3d Cir. 2022) (quoting FED. R. CIV. P. 8(a)(2)). This means a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when factual content is pled which allows the court to draw the reasonable inference that the defendant is liable for the

---

[6] Defendants briefed their Colorado River abstention argument under Rule 12(b)(1) standard of review. (Doc. 18, Br. in Supp at 4). Nevertheless, the court applies the Rule 12(b)(6) standard based on precedent in the Third Circuit from other district courts.

The court further notes that, when presented with the opportunity, however, the Third Circuit has not addressed the appropriate standard for dismissal under the Colorado River doctrine when reviewing district court decisions applying Rule 12(b)(6) in that context. See, e.g., Arsenis v. M&T Bank, No. 24-1151, 2025 WL 88838, at *1 (3d Cir. Jan. 14, 2025) (per curiam); Bridge v. Fogelson, 681 F. App'x 137, 138–39 (3d Cir. 2017); IFC Interconsult, AG v. Safeguard Int'l Partners, LLC., 438 F.3d 298, 307 (3d Cir. 2006).

misconduct alleged. Id. (citing Twombly, 550 U.S. at 570). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555).

The court evaluates motions to dismiss using a three-step process. The first step involves identifying the elements of each claim. Oldham v. Pennsylvania State Univ., 138 F.4th 731, 743 (3d Cir. 2025) (citation omitted). The second step involves reviewing the operative pleading and disregarding any formulaic recitation of the elements of a claim or other legal conclusion, as well as allegations that are so threadbare or speculative that they fail to cross the line between the conclusory and factual. See Lutz v. Portfolio Recovery Assocs., LLC, 49 F.4th 323, 328 (3d Cir. 2022) (citations and quotation marks omitted).

The third step evaluates the plausibility of the remaining allegations. Id. In evaluating plausibility of the plaintiffs' allegations, the court accepts all factual allegations as true, construes the complaint in the light most favorable to the plaintiffs, and draws all reasonable inferences in the plaintiffs' favor. Id. (citations omitted).

**Analysis**

### 1. Abstention Under The Colorado River Doctrine

The threshold inquiry under the Colorado River doctrine is whether the state-court litigation is parallel to the federal court action. See Ryan v. Johnson,

7

115 F.3d 193, 196 (3d Cir. 1997).  Proceedings are generally parallel when they involve the same parties and substantially identical claims, presenting nearly identical allegations and issues. <u>Kelly v. Maxum Specialty Ins. Grp.</u>, 868 F.3d 274, 284 n.8 (3d Cir. 2017).  Strict identity of parties and claims is not required. <u>Id.</u>  Rather, the actions must be substantially similar in both issues and parties. <u>Id.</u>  Substantial similarity exists when the parties involved are closely related and resolution of the issues in one action will necessarily settle the matter in the other. <u>Id.</u>  Accordingly, courts must compare "the state and federal action[s] as they contemporaneously exist." <u>Kelly</u>, 868 F.3d at 284.

Defendants argue here that plaintiffs' claims in the federal action parallel claims pending in the Luzerne County Court of Common Pleas (hereinafter referred to as "<u>Luzerne County I</u>, <u>II</u>, <u>III</u>, and/or <u>IV</u>").[7] (Doc. 18, Br. in Supp. at 7-11).  Plaintiffs disagree. (Doc. 21, Br. in Opp. at 6).

---

[7] Defendants attached to their brief in support and reply brief a trademark application, docket sheets, complaints, deposition transcripts, and subpoenas pertaining to the state court actions. (Docs. 15-3 – 15-9 and Docs. 24-1 – 24-3).  A court "may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." <u>Citisteel USA, Inc. v. Gen. Elec. Co.</u>, 78 F. App'x 832, 835 (3d Cir. 2003) (quoting <u>Pension Ben. Guar. Corp.</u>, 998 F.2d at 1196). Furthermore, where a document is integral to or explicitly relied upon in the complaint, it may be considered without converting a motion to dismiss for failure to state a claim into one for summary judgment under Rule 56. <u>Doe</u>, 30 F.4th at 342 (citations and internal quotation marks omitted).

Plaintiffs expressly reference the Trademark and Sohrab's fraudulent misconduct in their complaint.  Moreover, the documents related to the state court actions are a matter of public record.  Thus, the court will consider these documents while discussing the <u>Colorado River</u> doctrine.

8

To visualize the issue, the state and federal cases, the parties involved, and causes of actions are listed in the tables below.

| Federal Action |  |
| --- | --- |
| Filed: 1/29/2025 |  |
| **Parties** | **Claims** |
| Plaintiffs:<br>• Sameer Barat<br>• B&S – NY<br><br>Defendants:<br>• Sohrab Barat<br>• B&S Outlet – PA<br>• Illuminaire | • **Count I:** Conversion;<br>• **Count II:** Trespass to Chattels;<br>• **Count III:** Intentional interference with contractual relations;<br>• **Count IV:** Misappropriation of Trade Secrets;<br>• **Count V:** Unfair Competition;<br>• **Count VI:** Trademark Infringement;<br>• **Count VII:** Breach of Fiduciary Duty;<br>• **Count VIII:** Removal of Directors;<br>• **Count IX:** Proceedings Upon Application of Director;<br>• **Count X:** Federal Service Mark Infringement;<br>• **Count XI:** Federal Unfair Competition and False Designation of Origin;<br>• **Count XII:** False Advertising under Federal Law;<br>• **Count XIII:** Fraud in Representation to USPTO under Federal Law;<br>• **Count XIV:** Cybersquatting under Federal Law; and<br>• **Count XV:** Federal Trademark Counterfeiting. |

| State Actions | |
|---|---|
| **Luzerne County I**[8] <br><br> Filed: 04/30/2024 | |
| Parties | Claims |
| Plaintiff: Sohrab Barat <br> Defendant: Sameer Barat | Declaratory judgment for the recovery of money transferred by an employee at B&S Outlet – PA to Sameer's bank account. |

| State Actions | |
|---|---|
| **Luzerne County II**[9] <br><br> Filed: 05/31/2024 | |
| Parties | Claims |
| Plaintiff: Sameer Barat <br> Defendant: Q&A Barat, LLC[10] | Injunctive Relief: seeking restoration of access to a warehouse in Pittston, PA that was allegedly revoked by Q&A Barat LLC. |

| State Actions | |
|---|---|
| **Luzerne County III**[11] <br><br> Filed: 06/28/2024 | |
| Parties | Claims |
| Plaintiff: B&S Outlet – PA <br> Defendant: Sameer Barat | • **Count I:** Conversion; (B&S Outlet – PA asserts ownership over the Pittston warehouse and the inventory held there. B&S Outlet – PA also seeks recovery of inventory that was removed by Sameer from the warehouse. |

---

[8] There has been no activity on the docket for this action since May 2, 2024. (Doc. 18, Br. in Supp at 2).

[9] (Doc. 15-5, Ex. C).

[10] Q&A Barat, LLC is allegedly the owner and lessor of a warehouse located in West Pittston, PA. (Doc. 15-5, Ex. C ¶¶ 3-4).

[11] Per the Luzerne County III complaint, the state court entered an order granting injunctive relief and permitting Sameer to access the building. (Doc. 15-6, Ex. D ¶ 7).

10

| Luzerne County IV[12] | |
|---|---|
| Filed: 09/20/2024 | |
| Parties | Claims |
| Plaintiffs:<br>• Mohammad Barat<br>• B&S Outlet – NY[13]<br>Defendants:<br>• Sameer Barat<br>• B&S – NY | • **Count I:** Declaratory Judgment that Mohammad is the sole rightful owner of B&S Outlet – NY;<br>• **Count II:** Conversion (defendants unlawfully took possession of merchandise); and<br>• **Count III:** Fraud (based on Sameer's falsely representing himself as the founder and owner of B&S Outlet – NY). |

A comparison of the respective actions shows that some overlap. A closer review, however, reveals that the cases do not involve the same parties and the claims are not identical.

With respect to the parties, Plaintiff Sameer is involved in all of the state court actions. Plaintiff B&S – NY, however, is a defendant only in <u>Luzerne</u>

---

[12] According to Mohammad's complaint in <u>Luzerne County IV</u>:
- B and S Lighting and Furniture Outlet Inc. ("B&S Outlet – NY") was formed by Mohammad in 2007, (Doc. 15-7, Ex. E ¶ 9);
- B&S – NY was created by Sameer on January 30, 2012, (<u>Id.</u> ¶¶ 5, 11);
- Sohrab allegedly formed B&S Outlet – PA in 2019, (<u>Id.</u> ¶ 14). It was alleged that Sohrab did so with the blessings of his brother, Mohammad. (<u>Id.</u> ¶ 15). Additionally, Mohammad alleged that Sohrab received Mohammad's permission to apply for a trademark. (<u>Id.</u> ¶ 16).

Mohammad alleged in <u>Luzerne County IV</u> that defendants unlawfully took possession of merchandise in the Pittston warehouse. He also alleged that Sameer falsely represented himself as the founder and owner of B&S Outlet – NY. (Doc. 15-7, Ex. E). According to the parties' submission, this case is still ongoing.

[13] B&S Outlet – NY and Mohammad are not involved in the federal action.

11

County IV. Defendant Sohrab is a plaintiff only in <u>Luzerne County I</u>.[14] Defendant B&S Outlet – PA is a plaintiff in <u>Luzerne County III</u>. Defendant Illuminaire is not a party to any of the state court cases. Accordingly, the parties in the state and federal actions are not identical.

The causes of action likewise differ. In the federal action, the issues concern the: 1) ownership of B&S Outlet – PA and its assets; and 2) rights in the Trademark.

In contrast, <u>Luzerne County I</u> concerns the recovery of funds allegedly transferred by one of B&S Outlet – PA's employees to Sameer's bank account—an issue not presented here. <u>Luzerne County II</u> involves Sameer's attempt to regain access to a warehouse allegedly revoked by Q&A Barat LLC, which is also not at issue here. Moving to <u>Luzerne County III</u>, it centers on the ownership of B&S Outlet – PA's inventory, which is distinct from ownership of B&S Outlet – PA itself and its trade secrets. <u>Luzerne County IV</u> involves the ownership of B&S Outlet – NY, the Trademark, and certain warehouse inventory.[15] Even though the Trademark is also at issue in federal court, the dispute in <u>Luzerne County IV</u>

---

[14] As for Sohrab's involvement in <u>Luzerne County III</u>, the parties dispute that matter. A review of the <u>Luzerne County III</u> complaint show that Sohrab's name is nowhere to be found in the complaint. (Doc. 15-6, Ex. D). The fact that Exhibit A to that complaint names Sohrab as a contact name for B&S Outlet – PA is not sufficient to make him a party. (<u>See id.</u> at ECF p. 8).

[15] In <u>Luzerne County IV</u>, Mohammad, a non-party to the federal action, requests the state court to rule that Mohammad holds "the sole rightful ownership of rights over [the Trademark] to [B&S Outlet – NY]. (<u>See</u> Doc. 15-7, Ex. E ¶ 34(c)).

12

involves Mohammad and B&S Outlet – NY, who are not parties here.  Therefore, the state and federal actions do not present identical claims.[16] <u>Univ. of Maryland at Baltimore v. Peat Marwick Main & Co.</u>, 923 F.2d 265, 276 (3d Cir. 1991) ("[T]he lack of identity of all issues necessarily precludes Colorado River abstention.").

   Although some issues appear to overlap, the parties are plainly different and their relationships do not render the proceedings virtually identical. <u>See Beard v. Whittaker</u>, No. 4:25-CV-01427, 2025 WL 3765939, at *2 n. 32 (M.D. Pa. Dec. 30, 2025) ("[I]t would be an odd result for the Court to hold that one individual defendant in the state case is an alter ego or virtually identical to completely separate individual defendants in the federal action.").  The Third Circuit has cautioned "against abstention only where all of the defendants in the federal action are not also defendants in the state court action, i.e., where a plaintiff could not bring in her state court case all claims asserted in the federal action." <u>Allen v. Youth Educ. Servs. of PA, LLC</u>, No. CIV.A. 12-4269, 2013 WL 1334195, at *5 (E.D. Pa. Apr. 2, 2013) (citing <u>Trent v. Dial Med. of Fla., Inc.</u>, 33

---

[16] <u>Luzerne County II</u>, <u>III</u>, and <u>IV</u> are assigned to the Honorable Richard M. Hughes, III. (Doc. 24-1 at ECF pp. 1-8).  Second, Judge Hughes did consolidate the <u>Luzerne County II</u> and <u>III</u> and addressed them together on or about July 16, 2024. (Doc. 21, Br. in Opp. at 2; Doc. 15-7, Ex. E at ECF p. 15).  However, this has no bearing on the <u>Colorado River</u> analysis.

F.3d 217, 224 & n.6 (3d Cir. 1994)).  Accordingly, the state and federal actions

are not parallel.

Even assuming the state and federal proceedings were parallel, the court

would nonetheless conclude that "extraordinary circumstances" are not present

to warrant abstention. Nationwide Mut. Fire Ins. Co., 571 F.3d at 307–08 (quoting

Spring City Corp. v. Am. Bldgs. Co., 193 F.3d 165, 171 (3d Cir. 1999)).

Several of the Colorado River factors can be addressed briefly.[17]  The first

factor—which court first assumed jurisdiction over property in an *in rem* case

action—weighs against abstention. Ryan, 115 F.3d at 196.  The instant case

concerns the ownership of B&S – PA and the Trademark, not items located in the

Pittston warehouse that are at issue in state court in Luzerne County.  Although

Luzerne County IV also involves the ownership of the Trademark, that case

includes parties who are not named in this federal action. Thus, the District Court

for the Middle District of Pennsylvania first exercised jurisdiction over the

property relevant here.

The parties agree that the second factor, the inconvenience of the federal

forum, is neutral. (Doc. 18, Br. in Supp at 11; Doc. 21, Br. in Opp. at 10).  So in

next turning to the third factor, that considers the desirability of avoiding

---

[17] It is important to keep in mind that no single factor is determinative; rather, "the balancing of factors is heavily weighted in favor of the exercise of jurisdiction." Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc., 571 F.3d 299, 308 (3d Cir. 2009).

piecemeal litigation. This factor favors abstention only where "there is evidence of a strong federal policy that all claims should be tried in the state courts." Ryan, 115 F.3d at 197–98. "[T]he mere possibility of piecemeal litigation" fails to meet this test. Id. at 198. Defendants point to no strong federal policy that the instant issues should be tried in state courts. Accordingly, this factor does not favor abstention.

The fourth factor, the order in which jurisdiction was obtained, weighs in favor of abstention as the state actions were filed first and some have progressed further than the federal case.[18] The fifth factor—whether federal or state law controls—the complaint asserts claims under the Lanham Act and Pennsylvania law. This factor is therefore neutral at best and likely weighs against abstention.

As for the sixth factor, "the question whether parties' interests are protected is only relevant when they are not; that is, when the state court is adequate, this factor carries little weight." Capriotti v. Rockwell, No. CV 19-3136, 2020 WL 12630541, at *5 (E.D. Pa. Jan. 7, 2020) (citing Spring City Corp., 193 F.3d at

---

[18] Based on the parties' submissions, the state court consolidated Luzerne County II and III, conducted a final hearing regarding the matters, and concluded, in pertinent part, that Sameer, either individually or through his New York companies owned all of the merchandise located at the warehouse. (See Doc. 21, Br. in Opp. at 2; see also Doc. 15-7, Ex. E at ECF pp. 15-21).

Luzerne County II and III remain pending. (Doc. 24, Reply Br. at 1; Doc 24-1 at ECF pp. 3-4, 5-6; and Doc. 24-2).

172).  Given that neither party argues or presents evidence that the state court

would inadequately protect their interests, this factor is neutral.

In sum, the federal and state actions are not parallel.  Even assuming they

were, the majority of the six <u>Colorado River</u> factors are either neutral or weigh

against abstention.  Abstention under the <u>Colorado River</u> doctrine is thus

unwarranted and defendant's motion to dismiss on that basis will be denied.

### 2. Tortious Interference

Count III of plaintiffs' complaint asserts a state law cause of action for

tortious interference with contractual relations. (Doc. 1, Compl. ¶¶ 39-43).

Defendants argue that Count III should be dismissed because plaintiffs have not

pleaded the necessary facts to support such a claim.[19] (Doc. 19, Br. in Supp. at

3-6).  Plaintiffs argue that the motion to dismiss should be denied.

To properly state a cause of action for intentional interference with

prospective contractual relations under Pennsylvania Law,  the plaintiffs'

complaint must allege:  1) a prospective contractual relationship between

plaintiffs and a third party; 2) a purpose or intention to harm plaintiffs by

---

[19] Defendants argue that plaintiffs' complaint lacks the required specificity because plaintiffs
have not produced any documentation, or stated specific facts, to support their claim. (Doc. 19,
Br. in Supp. at 6).  Defendants also argue that plaintiffs did not produce any documentation to
support their claim of legal damages. (<u>Id.</u>)  Those argument are not persuasive because at this
stage of the proceedings, plaintiffs must only describe "'enough facts to raise a reasonable
expectation that discovery will reveal evidence of' [each] necessary element" of the claims
alleged in the complaint. <u>Phillips</u>, 515 F.3d at 234 (quoting <u>Twombly</u>, 550 U.S. at 556.

preventing that relationship from occurring; 3) the absence of privilege or justification with respect to defendants' conduct; and 4) the occurrence of actual harm or damage to plaintiffs resulting from defendants' conduct. <u>Orange Stones Co. v. City of Reading</u>, 87 A.3d 1014, 1025 (Pa. Commw. Ct. 2014).

Here, plaintiffs allege in the complaint that:

> 31. Defendant Sohrab Barat has illegally, fraudulently and without Sameer Barat's consent contacted Sameer Barat's and/or [B&S – PA's] business clients, which Sameer Barat's and/or [B&S – PA] have contracts with, and held himself out as the sole owner of [B&S – PA], directing them to contact him only to place orders and stating that he owns the only existing and operating B and S Lighting company.

> 40. [B&S – PA] and/or Sameer Barat had contractual relationships with various third-party clients.

> 41. Defendants intentionally harmed [B&S – PA] and/or Sameer Barat by interfering with their contractual relationships.

> 42. Defendants had no privilege or justification for the interference.

> 43. [B&S – PA] and/or Sameer Barat sustained damages from Defendants' conduct.

(Doc. 1, Compl. ¶¶ 40-43).

Those are sufficient allegations to defeat a motion to dismiss. As set forth above, the actual or prospective business relationships that Sameer alleges is his relationships with his and (allegedly) his entity's clients. Due to Sohrab's

17

actions, Sameer and B&S – PA allegedly sustained damages.  Accordingly, the motion to dismiss Count III will be denied.

### 3. Misappropriation Of Trade Secrets

Defendants also move to dismiss plaintiffs' claim for misappropriation of trade secrets under Count IV. (Doc. 16).  A claim under PUTSA requires a plaintiff to show that: (1) the plaintiff owned a trade secret, (2) the defendant acquired knowledge that trade secret in circumstances giving rise to a duty to protect its confidentiality, and (3) the defendant disclosed or used the trade secret without the plaintiff's consent. Bimbo Bakeries USA, Inc. v. Botticella, 613 F.3d 102, 110 (3d Cir. 2010) (citing 12 PA. CONS. STAT. § 5302).

Defendants argue that plaintiffs' complaint lacks the required specificity because plaintiffs have not produced any documentation or stated specific facts to identify the existence of a trade secret with which misappropriation occurred. (Doc. 20, Br. in Supp. at 5).  Defendants further argue that plaintiffs failed to produce any documentation to support their claim of legal damages. (Id.)

On the other hand, plaintiffs contend they have adequately alleged that Sohrab, a former incorporator and officer of B&S – PA, owed a duty to maintain the confidentiality of the company's customer list. (Doc. 22, Br. in Opp. at 3). Plaintiffs further assert that Sohrab now openly, fraudulently, and unlawfully holds himself out as the sole owner of B&S – PA and uses the customer list

18

without any authority or consent from the company's true owner and President, Sameer Barat. (Id.)

After careful review, the court concludes that plaintiffs have sufficiently pleaded their misappropriation of trade secrets claim. Whether a customer list ultimately constitutes a trade secret remains a factual question for resolution following the close of discovery. See, e.g., Super Cool Prods., Inc. v. Boehringer Lab'ys, LLC, No. CV 24-5158, 2025 WL 2811528, at *8 (E.D. Pa. Sept. 30, 2025) ("given the inherently sensitive nature of trade secrets, extensive descriptions of the purported trade secret are not necessary at the pleading stage but rather appropriate at the time of fact-intensive proceedings, such as an injunction hearing"); see also Synthes, Inc. v. Emerge Med., Inc., No. CIV.A. 11-1566, 2012 WL 4205476, at *27 (E.D. Pa. Sept. 19, 2012) (colleting cases) ("Whether information rises to the level of a trade secret under PUTSA is a question of fact not appropriate for resolution on a motion to dismiss."). Therefore, defendants' motion to dismiss Count IV of the plaintiffs' complaint will be denied.

**Conclusion**

For the reasons set forth above, the defendants' motions will be denied. An appropriate order follows.

**Date:** 2/13/26

_____
**JUDGE JULIA K. MUNLEY**
**United States District Court**