# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

Sameer Mohammad Barat and
B&S Lighting & Furniture Inc.,
   *Plaintiffs*

     v.

B and S Lighting and Furniture
Outlet Inc., Sohrab Barat, and
Illuminaire Lighting and Furniture
LLC
   *Defendants*

:
:
:   Case No. 3:25-cv-00181-JKM
:
:   Civil Action
:
:
:
:
:
:
:
:

---

B and S Lighting and Furniture
Outlet Inc., Sohrab Barat, and
Illuminaire Lighting and Furniture
LLC
   *Counterclaim Plaintiffs*

     v.

Sameer Mohammad Barat and
B&S Lighting & Furniture Inc.,
   *Counterclaim Defendants*

:
:
:
:
:
:
:
:
:
:
:
:
:

## DEFENDANTS/COUNTERCLAIM PLAINTIFFS' COUNTERCLAIMS

In accordance with Fed. R. Civ. P. 13, Defendants/Counterclaim Plaintiffs B

and S Lighting and Furniture Outlet Inc. ("B and S – PA"), Sohrab Barat

("Sohrab"), and Illuminaire Lighting and Furniture LLC ("Illuminaire")

1

(collectively, "Counterclaim Plaintiffs"), by and through their undersigned counsel, hereby state and allege the following Counterclaims against Plaintiffs/Counterclaim Defendants Sameer Mohammad Barat ("Sameer") and B&S Lighting & Furniture Inc. ("B & S – NY") (collectively, "Counterclaim Defendants"). Counterclaim Plaintiffs restate and incorporate by reference Defendants' Answer and Affirmative Defenses, filed on May 1, 2026. Dkt. No. 42.

## NATURE OF CASE

1.      This action arises from trademark infringements of Counterclaim Defendants of trademarks owned by Counterclaim Plaintiff Illuminaire, Counterclaim Defendant's tortious interference with contracts and prospective contracts of Counterclaim Plaintiffs and other unlawful acts of Counterclaim Defendants are more fully described below.

## PARTIES

2.      Counterclaim Plaintiff Sohrab Barat is an individual residing in Luzerne County, Pennsylvania. He is the owner and operator of B and S – PA and Illuminaire. Sohrab's address is 251 Wyoming Ave., Wyoming, PA 18644.

3.      Counterclaim Plaintiff B and S – PA is a Pennsylvania corporation organized and existing under the laws of the Commonwealth of Pennsylvania,

operating a wholesale and retail lighting and furniture business from a warehouse located at 16 Delaware Avenue, West Pittston, Pennsylvania.

4. Counterclaim Plaintiff Illuminaire is a Delaware limited liability company. Illuminaire is located at 251 Wyoming Ave., Wyoming, PA 18644.

5. Counterclaim Defendant Sameer Mohammad Barat, a.k.a. Mohammad Barat, a.k.a. Sameer Barat, a.k.a. Samir Barat, a.k.a. Mohammad Samir Barat, is an individual residing in New Jersey who has improperly held himself out as the sole owner of B and S – PA and its inventory and assets, and whose conduct forms the basis for the Counterclaims set forth herein. Sameer's address is 5 Douglas Drive, Hillside, NJ 07642.

6. Sameer is Sohrab's full brother.

7. Counterclaim Defendant B & S - NY is a New York corporation located and doing business at 14202-04 Liberty Ave., Jamaica, NY 11435.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over these Counterclaims pursuant to 28 U.S.C. §§ 1331 and 1338 because the Counterclaims arise under the Lanham Act, 15 U.S.C. § 1051 et seq., and seek relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Counterclaim Plaintiffs' state law claims, as

3

those claims form part of the same case or controversy as the federal claims and do not raise novel or complex issues of state law.

9.     This Court also has subject matter jurisdiction over the claims and causes of action asserted in these Counterclaims pursuant to 28 U.S.C. § 1332 because this dispute is between citizens of the Commonwealth of Pennsylvania, State of Delaware, State of New Jersey and State of New York, and the amount in controversy exceeds $75,000.

10.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to these Counterclaims occurred in this district, and because Counterclaim Defendants have submitted to this Court's jurisdiction by instituting this action.

11.     Counterclaim Plaintiffs bring these counterclaims to seek declaratory judgments, injunctive relief, and to recover damages caused by Counterclaim Defendants' actions, including compensatory and punitive damages, and disgorgement of improperly obtained funds.

## FACTUAL BACKGROUND

### *Illuminaire's Trademarks*

12.     Counterclaim Plaintiff Illuminaire is the owner of the federally registered service mark B&S LIGHTING INC B&S CHANDELIERS and Design

bearing U.S. Registration Number 5,583,577, shown below ("Registered Service Mark").



13.     On July 9, 2024, B & S Lighting and Furniture Outlet Inc, a New York entity, not a party in this lawsuit, assigned the Registered Service Mark to Illuminaire by *nunc pro tunc* assignment effective May 30, 2024.  B & S Lighting and Furniture Outlet Inc. was incorrectly listed as "B & S Lighting, Inc." in the application that matured into U.S. Registration No. 5,583,577.

14.     Illuminaire also has common law and pending federal trademark rights in the mark below ("Common Law Trademark")



15.     The Common Law Trademark is the subject of U.S. Trademark Registration Application No. 99/827,320, filed on May 15, 2026 by Illuminaire.

16. As stated in Application No. 99/827,320, Illuminaire's common law rights in the Common Law Trademark date back to 2010 for the following goods: chandeliers, sconce lighting fixtures, table lamps, floor lamps, fireplaces, console tables, cocktail tables, end tables, dining tables, chairs, living room furniture, bedroom furniture, floor mirrors, and wall mirrors. In addition, Application No. 99/827,320 includes vanity tables and vanity desks used with the Common Law Trademark since 2018.

17. Collectively, the Registered Service Mark and the Common Law Trademark will be referred to as the "Illuminaire Marks."

### *Counterclaim Defendants' Unlawful Acts*

18. B and S – PA imports and sells lighting fixtures; luxury lighting such as chandeliers; mirrors; furniture such as fireplaces, chairs, cocktail tables, dining tables, living room sets, bedroom sets; and related goods.

19. Counterclaim Plaintiff Sohrab is the driving operational force behind B and S – PA. Sohrab has been involved in the lighting and furniture business as early as 2008 and has been using Illuminaire's Marks at least as early as 2010.

20. Sohrab is responsible for sourcing inventory; importing from manufacturers in China and Malaysia; managing the warehouse; paying all operating costs including rent, utilities, and maintenance; and establishing and servicing B and S – PA's bank and customer accounts.

21.    Sohrab incorporated B and S – PA on or about November 24, 2019. Sohrab, at all times relevant, has had sole ownership interest in B and S – PA, and has at all times been the primary party operating the business from the Pennsylvania warehouse, sourcing inventory, and bearing the operating costs of the enterprise.

22.    Sameer, owing to familial proximity, was intimately aware of Sohrab's business operations.

23.    Counterclaim Defendants falsely contend they are the true owners of the Illuminaire Marks and the business of Counterclaim Plaintiff B and S – PA.

24.    Counterclaim Defendants deployed this claim as a weapon in the marketplace at great economic detriment to Counterclaim Plaintiffs, severely constraining Counterclaim Plaintiffs' ability to operate their businesses, and doing great damage to the Illuminaire Marks and their associated goodwill.

25.    Counterclaim Defendants have infringed upon Illuminaire Marks, counterfeited the Registered Service Mark, engaged in unfair and deceptive trade practices, diverted business funds and other assets, fraudulently acquired a website, interfered with contractual relationships, and filed two false brand complaints with Wayfair.com misrepresenting ownership of the Illuminaire Marks.

26.     Counterclaim Defendants, without authorization or consent, diverted funds belonging to B and S – PA into accounts under Counterclaim Defendants' control. On information and belief, the total amount diverted is hundreds of thousands of dollars.

27.     Counterclaim Defendants also caused Counterclaim Plaintiffs to lose access to B and S – PA's bank accounts, which severely constrained Counterclaim Plaintiffs' ability to continue their business even from a new entity.

28.     Counterclaim Defendants falsely represented to customers, suppliers, and third parties – and now to this Court – that they are the sole owner of B and S – PA and the Illuminaire Marks, when in fact Sohrab holds sole ownership rights in B and S – PA and in Illuminaire's Marks through sole ownership of Illuminaire.

29.     Counterclaim Defendants' egregious conduct has continued, and even intensified, despite Sameer's own sworn testimony in Pennsylvania State Court that he did not have anything to do with the formation of B and S – PA. Exhibit A, Testimony Transcript.

30.     B and S – PA has lost substantial revenue and goodwill from existing customers, as well as potential customers as a direct and proximate result of Sameer's misrepresentations, including five major customer accounts for which the lost sales amount to approximately $1.5 million per year.

31.     Counterclaim Defendants filed two separate brand complaints with Wayfair.com, a major national e-commerce platform through which B and S – PA sells its goods, falsely asserting ownership of the Illuminaire Marks in both submissions. The first complaint, filed approximately one year prior to the date of these Counterclaims, included a state court order (Exhibit C) that Counterclaim Defendants misrepresented as granting them brand rights over the Illuminaire Marks, when, in fact, that order granted no such rights. The second complaint, filed on or about May 4, 2026, again falsely claimed ownership of the Illuminaire Marks. Both complaints were made with the purpose and intent of causing Wayfair to suppress, restrict, or remove Counterclaim Plaintiffs' listings and account access. Exhibit B, Wayfair Complaint Emails.

32.     Counterclaim Defendants have contacted salespeople employed by or working on behalf of Sohrab and B and S – PA, customers, vendors, suppliers, and other third parties for the purpose of disrupting Counterclaim Plaintiffs' business operations and sales relationships.

33.     In September 2024, Sohrab, acting in his capacity as owner and controlling shareholder of B and S – PA, filed Articles of Amendment with the Pennsylvania Department of State pursuant to 15 Pa.C.S. § 1914(a) and (b), designating himself as President and Zahid Ghaznawi as Vice President. The Articles of Amendment expressly state that the amendment was "adopted by the

shareholders or members pursuant to 15 Pa.C.S. § 1914(a) and (b) or § 5914(a)." The Pennsylvania Department of State accepted and recorded both filings on September 27, 2024, assigning Amendment No. 0013966647, as reflected in the Index Report dated December 10, 2024.

34.     Without any legal basis, in their Complaint, Counterclaim Defendants Counterclaim Defendants claim Sohrab's filings were "fraudulent."

35.     Counterclaim Defendants have also deprived B and S – PA of its official website www.bandslighting.com which was hosted through GoDaddy with Sohrab Barat as the primary account holder. Counterclaim Defendants, who had access to the GoDaddy account through shared login credentials, caused the domain to be deleted or unlinked from the hosting account, after which the domain became available for public registration. Counterclaim Defendants then registered www.bandslighting.com in Sameer's name, despite having no lawful ownership interest in the Illuminaire Marks. Counterclaim Plaintiffs were thereafter forced to register www.bandschandeliers.com to continue operating their business.

36.     Counterclaim Defendants' conduct, including the trademark infringement, counterfeiting, conversion of funds and other intangible assets, false representations to customers and to Wayfair, and misrepresentation of a state court orderhave caused and continues to cause substantial harm to Counterclaim Plaintiffs, including damage to the Illuminaire Marks, impairment of goodwill, loss

10

of revenue, loss of customer relationships, loss of platform access, and reputational harm.

## COUNTERCLAIM I
### FEDERAL TRADEMARK INFRINGEMENT
### (15 U.S.C. § 1114)

37. Counterclaim Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs as if fully set forth herein.

38. The Registered Service Mark B&S LIGHTING INC B&S CHANDELIERS and Design is a valid and subsisting registration for wholesale and retail store services featuring chandeliers and furniture, including online wholesale and retail store services.

39. Counterclaim Defendants have used and continue to use a mark identical or similar to the Registered Service Mark in commerce in connection with the same class of services – wholesale and retail lighting and furniture services – without the consent or authorization of Illuminaire.

40. Because Counterclaim Defendants are using an identical mark or similar mark in connection with identical or similar services, consumer confusion is not merely likely but inevitable within the meaning of 15 U.S.C. § 1114(1).

41. Counterclaim Defendants' infringement is willful. As preserved in court filings and transcripts of sworn testimony related to *B&S Lighting and*

*Furniture Outlet, Inc. v. Sameer Mohammad Barat*, No. 2024-06878 (Pa. Ct. Com. Pl. Luzerne Cnty. filed June 28, 2024) and *Mohammad Bayat Barat v. Mohammad Sameer Barat*, No. 2024-10063 (Pa. Ct. Com. Pl. Luzerne Cnty. filed Sept. 20, 2024), Counterclaim Defendants are fully aware that Illuminaire owns the Illuminaire Marks, and that the Luzerne County Court did not grant Counterclaim Defendants rights over the Registered Service Mark or any intangible assets related to B and S – PA. Continuing to use the Registered Service Mark and assert rights over it to third parties using a court order that did not grant him those rights is particularly probative of willful, bad-faith infringement. Exhibit C, Luzerne Court Opinion.

42.    As a direct and proximate result of Counterclaim Defendants' willful infringement, Counterclaim Plaintiffs have suffered and continue to suffer damages including lost profits, lost business, and irreparable harm to the goodwill associated with the Registered Service Mark, for which there is no adequate remedy at law.

WHEREFORE, with respect to this Counterclaim, Counterclaim Plaintiffs respectfully demand judgment in their favor and against Counterclaim Defendants for: (a) a finding of willful trademark infringement; (b) an injunction barring any further use of the Registered Service Mark or similar marks by Counterclaim Defendants and any related entities; (c) disgorgement of Counterclaim Defendants' profits from infringing use; (d) actual damages; (e) treble damages for willful

infringement pursuant to 15 U.S.C. § 1117; (f) attorneys' fees and costs; and (g) such other and further relief as this Court deems just and proper.

## COUNTERCLAIM II
### FALSE DESIGNATION OF ORIGIN
### (15 U.S.C. § 1125(a))

43.  Counterclaim Plaintiffs repeat  and reallege the allegations set forth in the preceding paragraphs as if fully set forth herein.

44.  Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), prohibits any person from using in commerce any word, name, symbol, or device, or any false designation of origin, that is likely to cause confusion or to deceive as to the affiliation, connection, or association of that person with another person, or as to the origin, sponsorship, or approval of goods, services, or commercial activities.

45.  Counterclaim Defendants have used and continue to use the Illuminaire Marks or confusingly similar marks in commerce while falsely representing that they own the Illuminaire Marks, or that Counterclaim Defendants' goods and services originate from or are authorized by Counterclaim Plaintiffs. The actual commercial origin of the Illuminaire Marks' goodwill is Sohrab and B and S – PA, and then Illuminaire, who built the customer base, operated the warehouse, imported the products, and drove the business.

13

46. Counterclaim Defendants' specific acts constituting false designation of origin include, without limitation: (a) holding themselves out to customers as the authorized and sole business utilizing the Illuminaire Marks while directing customers away from Counterclaim Plaintiffs; and (b) filing brand complaints with Wayfair.com falsely claiming ownership of the Registered Service Mark.

47. Counterclaim Defendants' conduct is willful.

48. As a direct and proximate result of Counterclaim Defendants' conduct, Counterclaim Plaintiffs have suffered lost sales, lost customer relationships, lost platform access, and irreparable harm to the goodwill built by Counterclaim Plaintiffs, for which there is no adequate remedy at law.

WHEREFORE, with respect to this Counterclaim, Counterclaim Plaintiffs respectfully demands judgment in their favor and against Counterclaim Defendants for: (a) a finding of false designation of origin; (b) injunctive relief; (c) damages and disgorgement of profits pursuant to 15 U.S.C. § 1117; (d) attorneys' fees; and (e) such other and further relief as this Court deems just and proper.

## **<u>COUNTERCLAIM III</u>**
## **COMMON LAW TRADEMARK INFRINGEMENT**
### **(PENNSYLVANIA COMMON LAW)**

49. Counterclaim Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs as if fully set forth herein.

50.     Independent of federal registration, Illuminaire has acquired by assignment of goodwill, and also further established common law trademark rights in Illuminaire's Marks through actual, continuous, and exclusive use of Illuminaire Marks in commerce in Pennsylvania in connection with wholesale and retail lighting and furniture goods and services, predating any legitimate claim of use by Counterclaim Defendants in this market.

51.     Under Pennsylvania common law, trademark rights arise from actual use in commerce, and the senior user of a mark is entitled to protection against subsequent use by others that is likely to cause consumer confusion.

52.     Counterclaim Defendants have used and continue to use marks identical or confusingly similar to the Illuminaire Marks in Pennsylvania in connection with identical or similar services and goods and directed at the same customer base, without the authorization or consent of Counterclaim Plaintiffs. Accordingly, consumer confusion is inevitable.

53.     Counterclaim Defendants' infringement of the Illuminaire Marks is willful, as Counterclaim Defendants had full knowledge of Illuminaire's prior and continuous use of the Illuminaire Marks in the Pennsylvania market.

54.     As a direct and proximate result of Counterclaim Defendants' conduct, Counterclaim Plaintiffs have suffered damages including lost profits, lost

customers, and irreparable harm to the goodwill associated with the Illuminaire Marks in Pennsylvania.

WHEREFORE, with respect to this Counterclaim, Counterclaim Plaintiffs respectfully demand judgment in their favor and against Counterclaim Defendants for: (a) a finding of common law trademark infringement; (b) injunctive relief barring further infringing use by Counterclaim Defendants or related entities of Illuminaire Marks in Pennsylvania; (c) compensatory damages; (d) disgorgement of Counterclaim Defendants' profits from infringing use; (e) punitive damages for willful infringement; and (f) such other and further relief as this Court deems just and proper.

**COUNTERCLAIM IV**
**FEDERAL UNFAIR COMPETITION**
**(15 U.S.C. § 1125(a)(1)(A))**

55.    Counterclaim Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs as if fully set forth herein.

56.    Counterclaim Plaintiffs acquired substantial goodwill that was established in the Illuminaire Marks through years of commercial operation by B and S – PA and Illuminaire.

57.    Counterclaim Defendants' conduct constitutes unfair competition within the meaning of 15 U.S.C. § 1125(a)(1)(A).

58.   Counterclaim Defendants' conduct is willful.

59.   As a direct and proximate result of Counterclaim Defendants' unfair competition, Counterclaim Plaintiffs have suffered lost sales, lost customer relationships, and irreparable harm to the goodwill associated with the Illuminaire Marks, for which there is no adequate remedy at law.

WHEREFORE, with respect to this Counterclaim, Counterclaim Plaintiffs respectfully demand judgment in their favor and against Counterclaim Defendants for: (a) a finding of willful federal unfair competition; (b) preliminary and permanent injunctive relief barring Counterclaim Defendants and related entities from further use of the Illuminaire Marks in a manner likely to cause confusion; (c) disgorgement of Counterclaim Defendants' profits derived from their unfair competition; (d) actual damages; (e) attorneys' fees and costs pursuant to 15 U.S.C. § 1117; and (f) such other and further relief as this Court deems just and proper.

## COUNTERCLAIM V
## FEDERAL SERVICE MARK COUNTERFEITING
### (15 U.S.C. § 1114(1)(a))

60.   Counterclaim Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs as if fully set forth herein.

61.   The Registered Service Mark is a registered service mark covering wholesale and retail store services featuring chandeliers and furniture, including

17

online wholesale and retail store services, in International Class 035. A "counterfeit mark" within the meaning of 15 U.S.C. § 1116(d) is a spurious mark that is identical to, or substantially indistinguishable from, a registered mark, used in connection with the same type of services for which the mark is registered.

62.    Counterclaim Defendants have used and continue to use a mark identical to the Registered Service Mark in connection with the same class of services – wholesale and retail lighting and furniture services without authorization.

63.    Counterclaim Defendants' specific acts of counterfeiting include, without limitation: (a) advertising, offering, and providing wholesale and retail lighting and furniture services under the Registered Service Mark without authorization; (b) filing brand complaints with Wayfair.com – a platform through which retail store services are offered – falsely claiming authorized ownership of the Registered Service Mark in connection with those retail services; and (c) using the Registered Service Mark in customer communications to redirect retail and wholesale service transactions from Counterclaim Plaintiffs to Counterclaim Defendants.

64.    Counterclaim Defendants' counterfeiting is willful.

65.    As a direct and proximate result of Counterclaim Defendants' willful counterfeiting, Counterclaim Plaintiffs have suffered substantial damages and irreparable harm.

WHEREFORE, with respect to this Counterclaim, Counterclaim Plaintiffs respectfully demands judgment in their favor and against Counterclaim Defendants for: (a) a finding of willful service mark counterfeiting; (b) injunctive relief including seizure and destruction of infringing materials; (c) statutory damages of up to $2,000,000 per counterfeit mark per type of service pursuant to 15 U.S.C. § 1117(c), in lieu of actual damages at Counterclaim Plaintiffs' election; (d) attorneys' fees; and (e) such other and further relief as this Court deems just and proper.

## COUNTERCLAIM VI
## DECLARATION OF TRADEMARK OWNERSHIP
## (15 U.S.C. § 1119; 28 U.S.C. §§ 2201–2202)
## (Counterclaim Plaintiff Illuminaire v. Counterclaim Defendants)

66.    Counterclaim Plaintiff Illuminaire repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein.

67.    An actual, present, and justiciable controversy exists between the parties as to who is the lawful owner of the Illuminaire Marks. Counterclaim Defendants have centered their own Complaint around this question, making declaratory relief appropriate and ripe.

19

68.     Section 37 of the Lanham Act, 15 U.S.C. § 1119, expressly authorizes this Court to determine the right to use a registered mark and to direct the USPTO to cancel or transfer a registration as equity and the circumstances may require. The Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, independently authorizes this Court to declare the rights of the parties on any justiciable controversy.

69.     The facts establishing Illuminaire's ownership of the Illuminaire Marks are stated above.

70.     Illuminaire is entitled to a declaration from this Court that: (a) Illuminaire is the current lawful owner of the Illuminaire Marks; (c) Counterclaim Plaintiffs' use of the Illuminaire Marks is authorized and non-infringing; and (d) Counterclaim Defendants have no ownership interest in the Illuminaire Marks.

WHEREFORE, with respect to this Counterclaim, Illuminaire respectfully demands a declaration of trademark ownership as set forth above, and such other and further relief as this Court deems just and proper.

**COUNTERCLAIM VII**
**CYBERSQUATTING / UNLAWFUL DOMAIN ACQUISITION**
**(15 U.S.C. § 1125(d))**

71.     Counterclaim Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs as if fully set forth herein.

20

72.     The Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d), prohibits any person from registering, trafficking in, or using a domain name that is identical or confusingly similar to a distinctive or famous mark, with a bad faith intent to profit from that mark.

73.     The Registered Service Mark is distinctive and was in active commercial use at all times relevant to this Counterclaim. The domain name www.bandslighting.com is identical or confusingly similar to the Registered Service Mark in that it incorporates its core commercial identifier – "B and S Lighting" – in its entirety.

74.     Counterclaim Defendants registered www.bandslighting.com with a bad faith intent to profit from the Registered Service Mark within the meaning of 15 U.S.C. § 1125(d)(1)(B). The statutory bad faith factors that are satisfied here include, without limitation:

i.     No Intellectual Property Rights. Counterclaim Defendants had no legitimate intellectual property basis for registering a domain name incorporating that mark.

ii.     Prior Use of Domain by Another Party. The domain www.bandslighting.com had been the official website of B and S – PA prior to Counterclaim Defendants' unlawful acquisition. Counterclaim Defendants registered the domain not to establish a new legitimate business presence but to capture a

domain already associated with B and S – PA's business and hijack its goodwill.

iii.   <u>Intentional Diversion</u>. Counterclaim Defendants' acquisition of www.bandslighting.com was designed to divert consumers who would naturally associate that domain with the B and S – PA business and the Registered Service Mark, and to deprive B and S – PA of its established online commercial identity.

iv.   <u>Circumstances of Acqusition Reflecting Bad Faith</u>. Counterclaim Defendants did not simply register an available domain name; rather, the domain became available only because it was deleted or unlinked from the GoDaddy hosting account by a person with access to that account through shared credentials, after which Counterclaim Defendants promptly acquired it. The sequence of deletion followed by immediate acquisition by the same party who had account access gives rise to a strong inference of bad faith manipulation of the domain registration process. Furthermore, Counterclaim Defendants' failure to relaunch the website for approximately seven months after acquiring the domain is consistent with a purpose of warehousing the domain to deprive B and S – PA of it, rather than any legitimate immediate business use.

75.     On information and belief, the deletion of the domain from the GoDaddy hosting account was accomplished by Counterclaim Defendants through their use of shared account credentials for a purpose adverse to the account holder Counterclaim Plaintiffs.  This action constitutes an unauthorized and improper use of account access to interfere with B and S – PA's established online presence and to manufacture an opportunity to register the domain for himself.

76.     As a direct and proximate result of Counterclaim Defendants' unlawful conduct, B and S – PA lost its established domain name and associated online commercial identity, were forced to migrate to a new domain (www.bandschandeliers.com), and suffered disruption to its online business operations, customer relationships, and goodwill

WHEREFORE, with respect to this Counterclaim, Counterclaim Plaintiffs respectfully demand judgment in their favor and against Counterclaim Defendants for: (a) an order compelling the transfer of the domain name www.bandslighting.com to B and S – PA pursuant to 15 U.S.C. § 1125(d)(1)(C); (b) in the alternative, at B and S – PA's election, statutory damages of not less than $1,000 and not more than $100,000 per domain name pursuant to 15 U.S.C. § 1117(d); (c) actual damages; (d) attorneys' fees; and (e) such other and further relief as this Court deems just and proper.

## COUNTERCLAIM VIII

23

## TORTIOUS INTERFERENCE WITH EXISTING AND PROSPECTIVE
## CONTRACTUAL RELATIONS
## (PENNSYLVANIA COMMON LAW)

77.    Counterclaim Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs as if fully set forth herein.

78.    Counterclaim Plaintiffs had and, in some cases, continue to have existing and prospective contractual and business relationships with: (a) customers who have regularly purchased lighting and furniture services from Counterclaim Plaintiffs; (b) Wayfair.com, a major national e-commerce platform through which Counterclaim Plaintiffs offer and sell their products and services to consumers nationally; and (c) salespeople employed by or working on behalf of Counterclaim Plaintiffs to service customer accounts and drive revenue.

79.    Sameer, because of his familial proximity to his brother Sohrab's business operations, had full and actual knowledge of each of these relationships, having been familiar with Counterclaim Plaintiffs' customer base, aware of Counterclaim Plaintiffs' presence and business on the Wayfair platform, and aware of the salespeople working for Counterclaim Plaintiffs.

80.    Counterclaim Defendants intentionally and without privilege or lawful justification interfered with the foregoing relationships through the following specific acts: (a) contacting Counterclaim Plaintiffs' customers directly and falsely representing to them that Counterclaim Defendants are the sole owner of B and S –

24

PA, directing customers to deal exclusively with Counterclaim Defendants and to cease doing business with Counterclaim Plaintiffs; (b) filing a brand complaint with Wayfair.com approximately one year prior to the date of these Counterclaims, in which Counterclaim Defendants attached a state court order (Exhibit C) and misrepresented its contents to Wayfair, falsely claiming that the order granted Counterclaim Defendants brand rights over the Illuminaire Marks when the order conferred no such rights; (c) filing a second brand complaint with Wayfair.com, again falsely claiming ownership of Illuminaire Markswithout reference to any court order, demonstrating that Counterclaim Defendant abandoned the prior misrepresentation when it became untenable yet continued the interference campaign regardless; and (d) making threatening phone calls to salespeople employed by or working on behalf of Counterclaim Plaintiffs, for the purpose of intimidating those individuals into ceasing or curtailing their work for Counterclaim Plaintiffs.

81.    Counterclaim Defendants' interference was accomplished through wrongful means, including false representations to customers, fraudulent misrepresentation of the contents of a state court order to a commercial platform, false trademark ownership claims filed with a major marketplace, and threatening communications directed at Counterclaim Plaintiffs' employees and agents. None of these acts constitutes legitimate competitive conduct, and no competition

privilege defense is available to Counterclaim Defendants under Pennsylvania law where the interference is accomplished by wrongful means.

82.    The pattern of two separate Wayfair brand complaints, the first misrepresenting a court order and the second filed while this litigation is pending, establishes deliberate, sustained, and escalating interference intended to systematically deprive Counterclaim Plaintiffs of their Wayfair sales channel.

83.    As a direct and proximate result of Counterclaim Defendants' interference, Counterclaim Plaintiffs have suffered lost customer accounts, disruption to sales operations, and loss of prospective business relationships, all in amounts to be determined at trial. For example, due to Counterclaim Defendants' interference, Counterclaim Plaintiffs have lost business worth around $1.5 million (total per annum) from these customer accounts:

      a.     Jerusalem Furniture (Philadelphia, PA)

      b.     American Furniture (Philadelphia, PA)

      c.     Relevant Furniture (Philadelphia, PA)

      d.     United Furniture (Darby, PA)

      e.     US Furniture (Philadelphia, PA)

WHEREFORE, with respect to this Counterclaim, Counterclaim Plaintiffs respectfully demand judgment in their favor and against Counterclaim Defendants for compensatory damages, consequential damages, and punitive damages in

amounts to be proven at trial, together with injunctive relief barring further interference with Counterclaim Plaintiffs' customer, platform, and employment relationships, and such other and further relief as this Court deems just and proper.

## COUNTERCLAIM IX
### CONVERSION
### (PENNSYLVANIA COMMON LAW)

84.    Counterclaim Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs as if fully set forth herein.

85.    B and S – PA is the lawful owner of revenue and customer payments generated by the B and S – PA business and the bank accounts used to transact them.

86.    Counterclaim Defendants intentionally, without authorization, and fraudulently revoked Counterclaim Plaintiffs' access to B and S – PA's bank accounts, namely:

f.    Chase Bank Account no. ending in 2100

g.    Investor Bank Account no. ending in 5818

87.    Counterclaim Defendants intentionally and without authorization diverted customer payments and other business funds belonging to B and S – PA into accounts under Counterclaim Defendants' control. On information and belief, the total amount diverted is believed to constitute hundreds of thousands of dollars.

27

88.    The foregoing acts constitute conversion under Pennsylvania common law. Counterclaim Defendants intentionally exercised dominion and control over property belonging to B and S – PA in a manner inconsistent with B and S – PA's ownership rights.

89.    As a direct and proximate result of Counterclaim Defendants' conversion, Counterclaim Plaintiffs suffered damages equal to the value of the converted property, in amounts to be proven at trial.

WHEREFORE, with respect to this Counterclaim, Counterclaim Plaintiffs respectfully demands judgment in their favor and against Counterclaim Defendants for compensatory damages equal to the value of all converted property and an order compelling the immediate return and restoration of all converted bank accounts to B and S – PA, plus pre- and post-judgment interest, and such other and further relief as this Court deems just and proper.

## COUNTERCLAIM X
### UNJUST ENRICHMENT
### (PENNSYLVANIA COMMON LAW)

90.    Counterclaim Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs as if fully set forth herein.

91.    Counterclaim Defendants received and retained benefits belonging to Counterclaim Plaintiffs, without providing any lawful consideration therefor,

28

including, without limitation: (a) customer payments belonging to B and S – PA that Counterclaim Defendants diverted into his personal accounts, believed to total hundreds of thousands of dollars, with the precise amount to be established through discovery; and (b) business revenue and goodwill generated by Counterclaim Plaintiffs' operations that Counterclaim Defendants have redirected to themselves by falsely holding themselves out as the owners of B and S – PA and Illuminaire Marks.

92.     Counterclaim Defendants have been unjustly enriched at the direct expense of Counterclaim Plaintiffs. It would be inequitable and unjust to permit Counterclaim Defendants to retain the funds so obtained, particularly given the deliberate and deceptive manner in which those benefits were secured.

93.     Counterclaim Plaintiffs are entitled to restitution and disgorgement of all amounts by which Counterclaim Defendants have been unjustly enriched, in amounts to be determined at trial.

WHEREFORE, with respect to this Counterclaim, Counterclaim Plaintiffs respectfully demand judgment in their favor and against Counterclaim Defendants for restitution and disgorgement of all amounts by which Counterclaim Defendants have been unjustly enriched, in amounts to be proven at trial, together with pre- and post-judgment interest, and such other and further relief as this Court deems just and proper.

## COUNTERCLAIM XI

## DECLARATORY JUDGMENT – VALIDITY OF ARTICLES OF AMENDMENT

## (28 U.S.C. §§ 2201–2202; 15 Pa.C.S. § 1914)

94.     Counterclaim Plaintiffs repeat and reallege the allegations set forth in the preceding paragraphs as if fully set forth herein.

95.     An actual, present, and justiciable controversy exists between the parties regarding the validity and legal effect of the Articles of Amendment filed by Sohrab with the Pennsylvania Department of State on September 19, 2024, and September 27, 2024, for B and S Lighting and Furniture Outlet Inc. (Pennsylvania Entity No. 0006979673). Plaintiffs' Counts VII, VIII, and IX directly seek to undo these filings – by challenging Sohrab's authority, removing Sohrab as a director, and by dissolving B and S – PA – making a declaration of validity both necessary and ripe.

96.     Sohrab filed the Articles of Amendment in his capacity as owner and sole shareholder of B and S – PA, designating himself as President and Zahid Ghaznawi as Vice President. The Articles of Amendment expressly state on their face that the amendment was "adopted by the shareholders or members pursuant to 15 Pa.C.S. § 1914(a) and (b) or § 5914(a)" – the correct and proper statutory procedure under Pennsylvania's Business Corporation Law.

97. Under 15 Pa.C.S. § 1914(a) and (b), a shareholder with authority to act may adopt and file articles of amendment; Sohrab, as owner and sole shareholder of B and S – PA, had that authority. The Pennsylvania Department of State accepted and recorded both filings, assigning Amendment No. 0013966647, as reflected in the Index Report dated December 10, 2024.

98. The Articles of Amendment are valid on their face, were filed on official Commonwealth forms, complied with the procedural requirements of Pennsylvania law, and were accepted by the Commonwealth of Pennsylvania. Documents accepted by a state's department of corporations are entitled to a presumption of regularity, and Counterclaim Defendants' characterization of these filings as "fraudulent" is legally unfounded. A competing claim of ownership does not, without more, render a properly filed and state-accepted corporate amendment void or fraudulent.

99. Furthermore, in sworn testimony given in relation to *B&S Lighting and Furniture Outlet, Inc. v. Sameer Mohammad Barat*, No. 2024-06878 (Pa. Ct. Com. Pl. Luzerne Cnty. filed June 28, 2024) and *Mohammad Bayat Barat v. Mohammad Sameer Barat*, No. 2024-10063 (Pa. Ct. Com. Pl. Luzerne Cnty. filed Sept. 20, 2024), Sameer unequivocally stated that Sohrab created B and S – PA in 2019 without Sameer's knowledge and reiterated in the same testimony that B and S – PA was Sohrab's corporation. Exhibit A.

100.   Counterclaim Plaintiffs are entitled to a declaration from this Court that: (a) the Articles of Amendment filed by Sohrab on or about September 19, 2024, and September 27, 2024, for B and S Lighting and Furniture Outlet Inc. are valid and enforceable under Pennsylvania law; (b) Sohrab had lawful authority as owner and shareholder to adopt and file said amendments; and (c) Sohrab is the lawful President and controlling officer of B and S – PA as reflected in those filings and in the records of the Pennsylvania Department of State.

WHEREFORE, with respect to this Counterclaim, Counterclaim Plaintiffs respectfully demand a declaration as set forth above, together with such other and further relief as this Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Counterclaim Plaintiffs respectfully request that this Court enter judgment in their favor and against Counterclaim Defendants as follows:

A.   A finding of willful federal trademark infringement under 15 U.S.C. § 1114, and an award of injunctive relief, disgorgement of profits, actual damages, treble damages, and attorneys' fees pursuant to 15 U.S.C. § 1117(a);

B.   A finding of false designation of origin under 15 U.S.C. § 1125(a)(1)(A), and an award of injunctive relief, disgorgement of profits, actual damages, and attorneys' fees pursuant to 15 U.S.C. § 1117;

C.  A finding of willful Pennsylvania common law trademark infringement, and an award of injunctive relief, compensatory damages, disgorgement of profits, and punitive damages;

D.  A finding of willful federal unfair competition under 15 U.S.C. § 1125(a)(1)(A), and an award of injunctive relief, disgorgement of profits, actual damages, and attorneys' fees pursuant to 15 U.S.C. § 1117;

E.  A finding of willful federal service mark counterfeiting under 15 U.S.C. § 1114(1)(a), and an award of injunctive relief, seizure and destruction of infringing materials, and statutory damages of up to $2,000,000 per counterfeit mark per type of service pursuant to 15 U.S.C. § 1117(c), at Illuminaire's election in lieu of actual damages;

F.  A declaration pursuant to 15 U.S.C. § 1119 and 28 U.S.C. §§ 2201–2202 that Illuminaire is the true and lawful owner of, and that Counterclaim Defendants hold no ownership interest in, the Illuminaire Marks;

G.  A finding of cybersquatting under 15 U.S.C. § 1125(d), an order compelling transfer of the domain name www.bandslighting.com to B and S – PA pursuant to 15 U.S.C. § 1125(d)(1)(C), and in the alternative, at B and S – PA's election, statutory damages pursuant to 15 U.S.C. § 1117(d);

H.  Compensatory, consequential, and punitive damages for tortious interference with existing and prospective contractual relations, in amounts to be proven

33

at trial, together with injunctive relief barring Counterclaim Defendants from filing false brand complaints with any commercial platform, redirecting Counterclaim Plaintiffs' customers, and communicating with Counterclaim Plaintiffs' employees in a threatening or coercive manner;

I.  Compensatory damages for conversion equal to the value of all funds diverted from B and S – PA without authorization, and the value of all funds held in any bank accounts belonging to B and S – PA that Counterclaim Defendants assumed control over; together with an order compelling the immediate return and restoration of all such accounts to B and S – PA, and restitution of all funds wrongfully obtained therefrom; in amounts to be proven at trial;

J.  Restitution and disgorgement of all amounts by which Counterclaim Defendants have been unjustly enriched at Counterclaim Plaintiffs' expense, in amounts to be proven at trial;

K.  A declaration pursuant to 28 U.S.C. §§ 2201–2202 and 15 Pa.C.S. § 1914 that the Articles of Amendment filed by Sohrab Barat with the Pennsylvania Department of State on or about September 27, 2024, for B and S Lighting and Furniture Outlet Inc. are valid and enforceable, that Sohrab Barat had lawful authority to file said amendments, and that Sohrab Barat is the lawful President and controlling officer of B and S – PA;

L.   Pre- and post-judgment interest at the maximum rate permitted by law;

M.   Attorneys' fees and costs pursuant to 15 U.S.C. § 1117 and any other applicable fee-shifting provision; and

N.   Such other and further relief as this Court deems just and proper.

## **JURY TRIAL DEMAND**

Counterclaim Plaintiffs request a trial by jury on all issues properly triable to a jury raised in their Counterclaims.

WHEREFORE, Counterclaim Plaintiffs B and S Lighting and Furniture Outlet Inc., Sohrab Barat, and Illuminaire Lighting and Furniture LLC, demand judgment be entered in their favor and against Counterclaim Defendants with an award of attorney's fees and costs associated with the defense of this matter.

Respectfully submitted,

Ryder, Mazzeo & Konieczny LLC

Date: <u>May 15, 2026</u>                    By: <u>/FrankAMazzeo/</u>
                                                 Frank A. Mazzeo
                                                 808 Bethlehem Pike, Suite 200
                                                 Colmar, PA 18915
                                                 215-997-0248 (t)
                                                 215-997-0266 (f)
                                                 fmazzeo@rmkiplaw.com
                                                 PA Bar Reg. No. 65537
                                                 *Attorneys for Defendants/*

35

*Counterclaim Plaintiffs B and S
Lighting and Furniture Outlet Inc.,
Sohrab Barat, and
Illuminaire Lighting and Furniture
LLC*

## CERTIFICATE OF SERVICE

I, Frank A. Mazzeo, certify that, on May 15, 2026, the foregoing Defendants/Counterclaim Plaintiffs' Counterclaims, was filed electronically using the ECF system and are available for viewing and downloading from the ECF system, and a Notice of Electronic Case Filing was served on all counsel of record registered with the ECF system.

/FrankAMazzeo/